BAXTER BROTHERS *v.* MARY FREE BED
GUILD OF GRAND RAPIDS.

1. CONTRACTS—BUILDING—PAINTING AND DECORATING—SUBCONTRAC-
TOR—OWNER'S CONTRACT WITH GENERAL CONTRACTOR.

Record in action by painting and decorating subcontractor against
owner of addition to building *held*, insufficient to support lia-
bility of defendant for 8 of 17 items in final bill of particulars
for extras claimed in view of provision of contract between
defendant and the general contractor whereby painter was
to do cleaning and wash all the glass.

2. SAME—SUBCONTRACT—EXTRAS—LIABILITY OF OWNER CORPORATION
—EVIDENCE.

Finding by trial court that defendant building owner was not
liable to plaintiff subcontractors for claimed extras furnished
in connection with construction of an addition *held*, not con-
trary to the clear weight of the evidence, where record fails
to disclose that any officer of defendant corporation knew
plaintiffs furnished any item as an extra for which the de-
fendant would be making itself liable or furnished any item
outside of plaintiffs' subcontract with the general contractor.

Appeal from Kent; Souter (Dale), J. Submitted
October 13, 1955. (Docket No. 22, Calendar No.
46,562.) Decided December 1, 1955.

Assumpsit by Baxter Brothers, a copartnership
consisting of Archie W. Baxter and John H. Baxter,
against Mary Free Bed Guild of Grand Rapids, a
Michigan nonprofit corporation, for value of extras
supplied in decoration of hospital addition. Judg-
ment for defendant. Plaintiffs appeal. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 9 Am Jur, Building and Construction Contracts §§ 29, 73.

*McCobb, Heaney & Dunn,* for plaintiffs.

*Harrington, Waer, Cary & Martin,* for defendant.

Reid, J.  Plaintiffs, subcontractors, brought this action in assumpsit on express and implied contract for extras furnished defendant in connection with the construction of an addition to a children's hospital and orthopedic center owned and operated by defendant.  The case was tried by the trial judge without a jury.  Plaintiffs appeal from a judgment for defendant of no cause of action.

Defendant entered into a general contract with Barnes Construction Co., Inc., on April 13, 1950 for construction of an addition to the hospital for a total cost of $165,361.  The general contract did not include electrical, plumbing and heating and kitchen installations, which were covered by other contracts.

The general contract, among other things, contained the following:

"Paint colors shall be selected by the engineer. Before any work is done the engineer will furnish the contractor with a set of color cards and a schedule showing where the various colors shall go."

The general contract also contained the following:

Page 2, paragraph 5.  "Supervision.  All work shall be done under the supervision of the architect designated by the owner.  The architect shall determine the amount, quality, acceptability and fitness of all parts of the work, shall interpret the specifications, contract documents and any extra work orders, and shall decide all other questions, in connection with the work.  The architect shall have no authority to approve or order changes in the work which alter the terms or conditions of the contract.  Upon request, the architect shall confirm in writing any oral order, direction, requirement or determination."

Page 7, paragraph 23. "Subcontracts. (a) Nothing contained in the specifications or drawings shall be construed as creating any contractual relationship between any subcontractor and the owner. The divisions or sections of the specifications are not intended to control the contractor in dividing the work among subcontractors or to limit the work performed by any trade."

Plaintiffs were the successful bidders on the painting of the new addition and agreed to complete the painting and decorating in accordance with the plans and specifications. Their bid in final form was for $4,992. The subcontract was between Barnes Construction Company, the general contractor, and plaintiffs as subcontractors. Defendant was not a party to the subcontract.

The general contract between Barnes Construction Company and defendant also contained the provision:

Page 14, paragraph 44. "Extras. Except as otherwise herein provided, no charge for any extra work or material will be allowed unless the same has been ordered in writing by the owner and either the price stated in such order or definite acknowledgment made that a change in price is involved subject to later determination."

Page 14, paragraph 45. "Changes in Work. (a) The owner may at any time, by a written order, and without notice to the sureties, make changes in the drawings and specifications of this contract and within the general scope thereof (except that no change will be made which increases the total contract price to an amount more than 20% in excess of the original contract price without notice to sureties)."

Plaintiff did not get written approval for the extras sued for. No price was discussed for the extras. If an area was finished and the owner did not like

it, and had the painter do it over, that would constitute an extra, according to the claim of plaintiffs.

Plaintiffs made no claim for extras, either against Barnes the general contractor or against the defendant, until the work was virtually all done. A claim for the extras was by way of letter written by plaintiffs to defendant dated June 7, 1951, in which letter plaintiffs set forth factors claimed by plaintiffs to cause the work covered by the plaintiffs' contract with the general contractor, to cost more than anticipated. Among other things, the letter specified (1) that Baxter in making the bid contemplated that the building would be ready for decorating during the last winter months of 1950–1951, which were plaintiffs' customary "slow months," but that plaintiffs were not given a chance to start their work until "after our 'spring rush' was under way;" (2) that before plaintiffs were permitted to start their work there was one wage increase and that a second wage increase occurred after the job was under way; (3) that it became apparent before the job was half done that the plaintiffs would lose money on the contract; and (4) plaintiffs further state in their letter that plaintiffs did not specifically seek requisitions for any of these items but have gone ahead and completed items that needed doing. None of the above statements indicate anything for which the owner (defendant) would be liable.

In their bill of particulars filed June 30, 1953, the plaintiffs specify the number of hours of labor and total cost of labor and also, items of material used and total cost thereof, totaling in all, $8,316.07, "less credit for payment by Barnes Construction Company for portion of above work supplied under contract, $4,992, balance due $3,324.07." This balance is "for labor and materials furnished in connection with the painting and decorating of the new Mary Free Bed addition from March 5, 1951 to June

15, 1951," which words seem to indicate a total cost for labor and materials furnished by subcontractors (plaintiffs) on the job rather than for extras furnished on the job on orders from the owner (defendant). On January 7, 1954, the same day of the conclusion of the trial, the plaintiffs filed a "supplemental bill of particulars," containing some 17 specifications as follows:

"The following is a supplemental bill of particulars of the plaintiff's demands covering extra items not included in plaintiff's bill to Barnes Construction Company, and for the recovery of which this suit is brought:

"Material and labor used in applying an extra coat to all third floor ceilings ... $220.00

"Material and labor used in repainting certain wall areas in stairway, as a result of damage by men who installed railings .......................... 70.00

"Material and labor used in repairing and repainting third floor walls due to damage from leaks ..................... 50.00

"Material and labor used in changing color of third floor walls, including boys dormitory, girls dormitory and two 4-bed wards ........................ 220.00

"Labor and materials to repair and repaint nursery and isolation rooms on second floor due to damage resulting from installing new pipes in toilets .. 110.00

"Labor and materials to repaint physical therapy room due to change of color (2 coats) .......................... 150.00

"Labor and material for repairing and repainting miscellaneous walls throughout due to installation of electric outlets ............................... 150.00

"Labor and materials in repairing, spot priming and repainting of about 10 toilets due to pipe installation after we had completed our work .............. 280.00

"Labor and materials in repainting wall areas due to installation of cupboards .. 60.00

"Labor and materials in applying 2 extra coats with an enamel finish to 2 showers in basement ...................... 80.00

"Labor and material in repainting laundry and parts of corridors due to damage by others ............................. 30.00

"Labor and materials in applying 3 coats of enamel finish to laundry room instead of 1 coat of water paint covered by specifications ................... 140.00

"Labor and materials in applying 3 coats of oil paint to basement walls in place of 2 coats of water paint as required by specifications ..................... 120.00

"Labor and materials for miscellaneous work not in specifications including finishing (4 coats) a door, painting of ornamental iron, refinishing baseboards in basement school rooms, painting of panel-board installed by plumber, touching up areas where new building joined old, touching up baseboard after damage by floor men ................... 90.00

"Labor and materials used in repairing and repainting various walls throughout upon which cracks appeared and surfaces where others had injured freshly painted surfaces ................... 150.00

"Amount paid Grand Rapids Window Company for washing of windows ..... 170.00

"Additional costs of labor and materials
  resulting from work being changed at
  defendant's request from the institution-
  al decorating job in accordance with
  plans and specifications to the decora-
  tor's job which was furnished in its
  place ...............................1,234.07

                                            $3,324.07"

The record does not sufficiently establish the de-
fendant owner's liability for repainting "as a result
of damage by men who installed railings" or for
leaks or damage resulting "from installing new
pipes in toilets," or for labor and materials "due to
installation of electric outlets," or "due to pipe in-
stallation after we had completed our work," or
"due to damage by others," or for "touching up
areas where new building joined old," or for "touch-
ing up baseboard after damage by floor men," or for
labor and materials "where others had injured fresh-
ly painted surfaces," or for "amount paid Grand
Rapids Window Company for washing of windows."
It is to be noted that the contract between defendant
and the general contractor included, "cleaning by
painter: .. *  .*  * wash all glass."

Plaintiffs' witness Tornga gave testimony as to
some extra colors of paints which he claimed were
suggested by some of the ladies serving on the com-
mittee for defendant. Also, Mr. John H. Baxter,
one of plaintiffs, testified that Baxter Brothers had
done work for defendant guild for approximately
10 or 11 years. He testified:

"I always assumed Mrs. Cary [superintendent for
defendant corporation] was representing the of-
ficers and my conversations with the Mary Free Bed
Guild were usually through Mrs. Cary."

Mrs. Cary testified:

"I did not assume any authority in the way of making any variations in the contract."

Defendant's witness Mr. W. B. MacWhirter (the architect and supervisor on the job) testified:

"I was in charge of the job and Mrs. Spencer and her committee only approved the colors. They had no power to change the type or quality of paint or do anything but approve the color that was used. * * * To my knowledge there was only 1 change in color and that was on the third floor on the prime coat. I wouldn't say that there were not other changes in colors from the plans and from the original choice. I wouldn't know about that, but coming through my office there was no indication of it, but to my own knowledge there was only 1 change that I told you about."

Mr. MacWhirter further testified:

"To my knowledge there was no conversation between me and Baxter Painting Company in regard to price of extras except on 1 occasion. So far as I know the specifications were completely and exactly met. Baxter Brothers did a good job. I had no complaint of their work at all. As a matter of fact, I complimented them orally on the quality of their work. The only time a question of price came up during the course of the construction, was when Mr. Tornga came into our little field office one morning and said: 'We put an extra coat of paint on the laundry room and on the ironing room. The 1 coat of paint which was specified in the specifications did not cover too well. I thought it needed an extra coat of paint so I went ahead and put it on.' I said, 'I agree with you that they look a lot better with 2 coats of paint on them than 1 coat of paint.' And I said, 'I will try to get the board of directors of the Mary Free Bed Guild to authorize an extra for those 2 rooms if you will let me know what you think it is

worth.' He put the extra coats on those 2 rooms of his own volition and not through any change from my office. Those rooms were in the basement of the building."

Mr. Baxter testified as follows on cross-examination:

"*Q.* You never made any charge on the books against the Mary Free Bed Guild until after the job was finished, on your books? If you did, I wish you would bring in the books, and show the judge this afternoon.

"*A.* As I say, there was no itemization made of the cost.

"*Q.* So the Mary Free Bed Guild did not appear on your books at all up to the time you finished the job?

"*A.* No, sir."

There is no showing that any officer of defendant corporation knew that plaintiffs furnished any item as an extra for which the defendant would be making itself liable or furnished any item outside of plaintiffs' subcontract with the Barnes Construction Company. Plaintiffs kept no records to show and its books do not show, what part of their work was done under their contract with Barnes Construction Company, what that part cost, nor what part furnished by plaintiffs was outside of the general contract and what that part cost.

The trial court concluded that the defendant was not liable for any extras nor for any item to the plaintiffs. After a careful consideration of the whole record, we conclude that the finding by the trial judge is not contrary to the clear weight of the evidence. The judgment in favor of defendant of no cause of action is affirmed. Costs to defendant.

CARR, C. J., and BUTZEL, SMITH, SHARPE, BOYLES, DETHMERS, and KELLY, JJ., concurred.